**In the Matter of Andrew D. JACKSON.**

No. 45S00–9602–DI–164.

Supreme Court of Indiana.

July 3, 1997.

No appearance for Respondent.

Donald R. Lundberg, Executive Secretary, Dennis K. McKinney, Staff Attorney, Indianapolis, for the Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

PER CURIAM.

The Disciplinary Commission has charged that the respondent assisted a disbarred attorney in the unauthorized practice of law. A hearing officer appointed by this Court to hear this matter concluded, following full evidentiary hearing, that the respondent engaged in misconduct as charged. The respondent was not present at the hearing and has otherwise presented no defense. This matter is now before this Court for final resolution. Where, as here, the findings and conclusions of the hearing officer are unchallenged, we accept them with the understanding that final determination as to misconduct and sanction rests with this Court. *In re Gerde,* 634 N.E.2d 494 (Ind.1994). The respondent's admission to the bar of this state in 1982 confers disciplinary jurisdiction in this matter.

The Commission's *Verified Complaint for Disciplinary Action* is in two counts. All allegations therein center on the respondent's involvement with former attorney Owen W. Crumpacker, whom this Court disbarred in 1978. *In re Crumpacker,* 269 Ind. 630, 383 N.E.2d 36 (1978). Pursuant to Count I, we now find that, before his disbarment, Mr. Crumpacker was attorney for an estate (the "estate") pending in Lake Superior Court. The personal representative for the estate died in 1974, but the estate remained open. Bank statements reflecting undistributed assets of approximately $4,500

were sent to the deceased personal representative's nephew (the "nephew"). On August 29, 1978, an associate in Mr. Crumpacker's law firm filed a petition in the estate seeking to appoint the nephew as successor trustee despite the fact that the nephew had not sought or approved such appointment or signed the petition. On October 23, 1978, the court appointed the nephew as successor trustee for the estate. In a petition filed on January 18, 1984, the nephew notified the trial court that he had not sought appointment as trustee and that he did not wish to serve in that capacity. He asked that the appointment be vacated and the trial court complied.

Sometime around 1995, Mr. Crumpacker prepared a document entitled *Successor Executor's and Trustee's Final Report* for the estate. Mr. Crumpacker gave the document to the respondent for the purpose of obtaining the nephew's signature. On April 24, 1995, the respondent presented the document to the nephew, informing him that his signature was necessary to close the estate. At the respondent's urging, the nephew signed the report, but without intending to serve as personal representative of the estate, without intending to employ the respondent as his personal attorney, and with no expectation that he would claim any portion of the estate's assets as fees. Thereafter, the respondent tendered the final report to the trial court. A probate commissioner set final hearing for June 7, 1995.

· On June 7, 1995, Mr. Crumpacker, the respondent, and the nephew attended the hearing. During the proceedings, the nephew informed the probate commissioner that neither the respondent nor Mr. Crumpacker was serving as his attorney, that he sought no fees from the estate, and that he simply wanted the assets of the estate distributed to residuary heirs. On the respondent's behalf, Mr. Crumpacker answered the court's questions regarding the final report. Following

the June 7 hearing, Mr. Crumpacker submitted pleadings and other documents to the court.

■ Indiana Professional Conduct Rule 5.5(b) prohibits an attorney from assisting a person in the unauthorized practice of law.[1] The respondent violated Ind.Professional Conduct Rule 5.5(b) by obtaining the nephew's signature on a legal document prepared by Mr. Crumpacker, allowing or causing his name to be affixed to it as the nephew's attorney, and by filing that document with the trial court. By representing falsely in the final report that he was the nephew's attorney, the respondent violated Prof. Cond.R. 3.3(a)(1).[2]

Under Count II, we now find that Mr. Crumpacker was a party in two cases filed in the United States District Court for the Northern District of Indiana, Hammond Division, in the early 1980s.[3] By order dated July 12, 1984, Judge Richard A. Posner of the United States Court of Appeals for the Seventh Circuit permanently enjoined Mr. Crumpacker, or anyone acting on his behalf, from filing suit in federal court on certain specified claims which Mr. Crumpacker previously litigated to finality and which he attempted to resurrect in the two Northern District cases. Specifically, Judge Posner enjoined Mr. Crumpacker from relitigating any claim that arising out of or related to property condemned by the United States for the Indiana Dunes National Lakeshore, and from filing any of the specified claims in state court if such claims were within the jurisdiction of the federal courts. Further, Judge Posner ordered Mr. Crumpacker to append a copy of the June 12, 1984, order to any future state court complaint regarding the specified claims.

In a letter dated May 10, 1995, Mr. Crumpacker wrote to the respondent to request that he file suit in the name of the Sand Ridge Bank, as trustee for the "Mary Windle Crumpacker Trust," against the Mercantile

---

1. Indiana Professional Conduct Rule 5.5(b) provides:

 A lawyer shall not assist a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law.

2. Professional Conduct Rule 3.3(a)(1) provides:

 A lawyer shall not knowingly make a false statement of material fact or law to a tribunal.

3. Those cases were captioned *Owen W. Crumpacker vs. Robert Gettinger,* Cause No. H 83–700, and *Owen W. Crumpacker vs. Morton B. Kanz,* Cause No. H 83–7706.

National Bank (and others) to quiet title to real estate which Mr. Crumpacker claimed to own but which had been condemned by the United States for the Indiana Dunes National Lakeshore. A copy of the letter was forwarded to the Mercantile Bank. On May 26, 1995, an attorney for the Mercantile Bank notified the respondent that the contemplated quiet title action might violate Judge Posner's 1984 order, and, for the respondent's benefit, provided the respondent with a copy of the order. On June 5, 1995, a *Complaint to Quiet Title to Real Estate, for Ejectment and Damages, Both Compensatory and Punitive* was filed in Porter Superior Court. The respondent's signature appeared on the complaint as attorney for sole plaintiff Sand Ridge Bank, although the complaint was recognizably Mr. Crumpacker's work product. Upon motion of the defendants, the action was removed to the United States District Court for the Northern District of Indiana, Hammond Division. The United States, as a defendant to the action, filed a motion to dismiss and attached a copy of Judge Posner's order as an exhibit. On August 18, 1995, the United States forwarded a copy of the motion and exhibit to the respondent.

The Sand Ridge Bank had not authorized the respondent or anyone else to file a quiet title action in its name and had no knowledge of the suit before it was filed. Further, the Sand Ridge Bank is not and has never been the trustee of a "Mary Windle Crumpacker Trust." Upon learning of the suit, the Sand Ridge Bank moved to dismiss it on the grounds that it had not authorized it and that it was not trustee of the named trust. Various other parties in the quiet title suit moved to dismiss the complaint and sought an award of attorney fees against the respondent. Their motions were served on the respondent at his address as reflected on the Roll of Attorneys maintained by the Clerk of the Indiana Supreme Court. Accordingly, no later than July 10, 1995, the respondent knew that the quiet title action had been filed

and that it listed him as attorney for the purported plaintiff, Sand Ridge Bank. Thereafter, the respondent never filed notice with the trial court that he had not filed the action or signed the complaint, and he made no attempt to withdraw as attorney for the plaintiff or have the case dismissed. At a December 21, 1995, trial court hearing regarding the complaint, the respondent claimed he had not prepared or signed the complaint, and that it was in fact the work of Mr. Crumpacker.

 The respondent assisted Mr. Crumpacker in the unauthorized practice of law and thus violated Prof.Cond.R. 5.5(b) by failing to inform the trial court for a period of approximately five months that Mr. Crumpacker had actually prepared and filed the quiet title suit. By allowing his name to be affixed to the pleadings as attorney of record with knowledge that the subject matter of the suit had previously been litigated to finality in prior lawsuits, the respondent violated Prof.Cond.R. 3.1.[4] By failing to immediately notify the trial court, after the quiet title action was filed, that he was not attorney of record, contrary to the assertion in the pleading, the respondent violated Prof. Cond.R. 3.3(a)(2).[5]

 Having found misconduct, we must now impose an appropriate sanction. The hearing officer found that by assisting a disbarred attorney circumvent the orders of this Court, the respondent demonstrated a total disregard and disrespect for the obligations imposed upon him by virtue of his admission to practice. We agree, and note further that his actions were the product of a carefully conceived (although inartfully executed) scheme to allow a disbarred attorney to litigate old issues, some of which a federal tribunal had explicitly barred from being revisited. It is especially troubling that the respondent chose to assist Mr. Crumpacker in the Northern District cases in the face of the federal court order precluding their relit-

---

4. Professional Conduct Rule 3.1 provides, in relevant part:

A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law.

5. Professional Conduct Rule 3.3(a)(2) provides:

A lawyer shall not knowingly fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act against a tribunal by the client.

igation, this Court's order disbarring Mr. Crumpacker, and the Mercantile Bank's warning that filing of the claims risked violation of a federal court order. The respondent's actions reflect dishonesty and a general disregard of court orders. This collection of negative indicators of his fitness to practice law convinces us that a very lengthy suspension from practice is warranted.

It is, therefore, ordered that the respondent, Andrew D. Jackson, be suspended from the practice of law for a period of not less than three years, beginning August 8, 1997. At the conclusion of that period, the respondent may petition this Court for readmission to the bar of this state, provided he can demonstrate compliance with the terms and conditions set forth in Admis.Disc.R. 23(4).

The Clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc.R. 23(3)(d) and to provide the clerk of the United States Court of Appeals for the Seventh Circuit, the clerk of each of the Federal District Courts in this state, and the clerk of the United States Bankruptcy Court in this state with the last known address of respondent as reflected in the records of the Clerk.

Costs of this proceeding are assessed against the respondent.